# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### NO. 10-30443

**JOHN KINSEL,**
**Plaintiff-Appellant,**

**v.**

**BURL CAIN, Warden–Louisiana State Penitentiary,**
**Defendant-Appellee**

**Appeal from the United States District Court**
**for the Eastern District of Louisiana, New Orleans**

### BRIEF FOR THE PETITIONER-APPELLANT JOHN KINSEL

**LAW OFFICE OF AUTUMN TOWN**
Autumn Town, Bar No. 28787
700 Camp Street, Suite 112
New Orleans, LA 70130
Telephone: (504) 528-9500
Facsimile:  (504) 324-0216

July 6, 2010

## <u>CERTIFICATE OF INTERESTED PERSONS</u>
John Kinsel v. Burl Cain, Warden
No. 10-30443

In compliance with Fifth Circuit Local Rule 28.2.1, undersigned counsel for Appellant certifies that she knows of no persons, associations of persons, firms, partnerships, or corporations which have an interest in the outcome of this particular case other than the parties noted in the style of the case.

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS..........................................................i

STATEMENT REGARDING ORAL ARGUMENT.................................................ii

TABLE OF CONTENTS.............................................................................................iii

TABLE OF AUTHORITIES.......................................................................................iv

STATEMENT OF JURISDICTION..........................................................................viii

 STATEMENT OF ISSUES.........................................................................................ix

STATEMENT OF THE CASE.....................................................................................1

     (I)    Course of Proceedings and Disposition in
           the Court Below........................................................................................1

     (ii)   Statement of Facts..................................................................................4

SUMMARY OF ARGUMENT.....................................................................................11

ARGUMENT.................................................................................................................12

CONCLUSION..............................................................................................................31

CERTIFICATE OF SERVICE.....................................................................................33

CERTIFICATE OF COMPLIANCE...........................................................................34

# TABLE OF AUTHORITIES

## CASES:

Bell v. Cone, 535 U.S. 685 (2002)............................................................................13

Berger v. United States. 295 U.S. 78 (U.S. 1935)...................................................28

Bousley v. U.S., 118 S.Ct. 1604 (1998).............................................................13, 14

Davis v. Alaska, 415 U.S. 308(1974)......................................................................17

Dobbert v. Wainwright, 468 U.S. 1231 (1984)........................................................17

Miller-El v. Cockrell, 537 U.S. 322 (2003).............................................................13

Schlup v. Delo, 513 U.S. 298 (1995).................................................................13, 14

United States v. Scheffer, 523 U.S. 303 (1998) ......................................................17

Williams v. Taylor, 529 U.S. 362 (2000)................................................................13

Cheney v. Director, 635 F.2d 414 (5th Cir. 1981)...................................................23

Fairman v. Anderson, 188F.3d 635 (5th Cir. 1999)................................................14

Kittelson v. Dretke, 426 F.3d 306 (5th Cir. 2005).............................................16, 17

McCall v. Dretke, 390 F.3d 358 (5th Cir. 2004).....................................................12

Moore v. Johnson, 225 F.3d 495 (5th Cir. 2000)....................................................13

Newman v. United States. 238 F.2d 861 (5th Cir. 1956) ....................................16, 17

Ortiz v. Quarterman, 504 F.3d 492 (5th Cir. 2007)................................................12

United States v. Franklin, 561 F.3d 398 (5th Cir. 2009)..........................................31

United States v. Hayes, 589 F.2d 811 (5th Cir. 1979)...............................................22

United States v. Hinojosa, 958 F.2d 624 (5th Cir. 1992)...........................................22

United States v. Lopez-Escobar, 920 F.2d 1241 (5th Cir. 1991)...............................23

United States v. Martinez, 975 F.2d 159 (5th Cir. 1992)...........................................22

United States v. O'Keefe  128 F.3d 885 (5th Cir. 1997) ...........................................24

United States v. Pena, 949 F.2d 751 (5th Cir. 1991)................................................23

United States v. Thompson, 158 F.3d 223 (5th Cir. 1998).........................................14

United States v. Torres, 163 F.3d 909 (5th Cir. 1999)..............................................14

Harvey v. Horan, 285 F.3d 298, 299 (4th Cir. 2002)...............................................31

Grace v. Butterworth, 586 F.2d 878 (1st Cir. 1978)................................................18

State v. Broadway, 753 So.2d 801 (La. 1999).........................................................22

State v. Hammons, 597 So.2d 990 (La. 1992)....................................................15, 23

State v. Howard, 414 So.2d 1210 (La. 1982)..........................................................22

State v. Humphrey, 445 So.2d 1155 (La. 1984)..................................................15, 24

State of Louisiana v. John Kinsel, 967 So.2d 499 (La. 2007)......................................3

State v. Kinsel, No. 2003-KP-1815 (La. 4/8/2004)....................................................2

State v. Kinsel, 812 So.2d 641 (La. 2002)................................................................2

State v. Manning, 380 So.2d 54 (La. 1980).......................................................15, 23

State v. Smith, 793 So.2d 1199, 1211 (La. 2001)....................................................23

State v. Smith, 430 So.2d 31 (La. 1983)....................................................23

State of Louisiana v. Talbot, 408 So.2d 861 (La. 1980)......................................27, 31

State v. Kinsel, 783 So.2d 532 (La. App. 5 Cir. 2001) ..........................................1, 24

State v. Brooks, 758 So.2d 814 (La. App. 4 Cir. 1999)..........................................23

State v. Cureaux, 736 So.2d 318 (La. App. 4 Cir. 1999)....................................15, 23

State v. Jones, 850 So.2d 782 (La. App. 4 Cir. 2003 ..........................................15, 23

State of Louisiana v. Davis, 431 So.2d 117 (La. App. 3 Cir. 1983)........................24

Brown v. Florida 381 So.2d 690 (Sup. Ct of Florida 1980)......................................24

Becker v. State, 585 N.E.2d 279 (Ind. App. 3 Dist. 1992)..........................................23

Tallman v. ABF, 767 P.2d 363 (N.M.App. 1988)....................................................27

Horn v. Hill, 180 Ore. App. 139 (2002). ................................................................24

## STATUTES AND RULES:

United States Constitution Fifth Amendment................................................ix, 11, 12

United States Constitution Sixth Amendment................................................ix, 11, 12

United States Constitution Fourteenth Amendment.......................................ix, 11, 12

28 U.S.C. § 2253.........................................................................................viii

28 U.S.C. § 2254.........................................................viii, 3, 12, 13, 21, 30

Fed. R. App. P.32(a)(7)...............................................................................34

Fifth Circuit Local Rule 28.2.1..........................................................................i

Fifth Circuit Local Rule 32.2.......................................................................34

Fifth Circuit Local Rule 32.2.7(c)............................................................34

## <u>STATEMENT OF JURISDICTION</u>

(A)    The district court had jurisdiction of this collateral proceeding under 28 U.S.C. § 2254.

(B)    As notice of appeal is timely, this Court has jurisdiction under 28 U.S.C. § 2253(a).

(C)    Judgment of a certificate of appealability to this Court was granted on April 21, 2010.

(D)    This appeal is from a final judgment in a collateral proceeding.

## STATEMENT OF THE ISSUES

**APPELLANT WAS DENIED HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS OF LAW, AND HIS RIGHT TO CONFRONT HIS ACCUSERS, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, WHEN HE WAS CONVICTED OF AGGRAVATED RAPE BASED SOLELY ON THE FALSE TESTIMONY OF AN ACCUSER, WHO HAS SINCE RECANTED AND ADMITTED IN OPEN COURT THAT HER PRIOR ALLEGATIONS WERE UNTRUE. PETITIONER WAS NOT PERMITTED TO PRESENT THE RECANTATION FACTS TO A JURY; THUS HE IS ACTUALLY INNOCENT OF THE CRIME AND THE LOWER COURTS' UNREASONABLE DETERMINATION OF THE FACTS, IN LIGHT OF THE EVIDENCE PRESENTED IN PETITIONER'S CASE, REQUIRES CONSIDERATION AND REVERSAL TO PREVENT A FUNDAMENTAL MISCARRIAGE OF JUSTICE.**

## STATEMENT OF THE CASE

### (i)    Course of Proceedings and Disposition in the Court Below[1]

On January 30, 1997, Petitioner John M. Kinsel was charged with a violation of La. R.S. 14:42 for the aggravated rape of his step-daughter Alyssa Medlin (a person under the age of twelve years old), which allegedly occurred from November 1992 through October 1995.  Reading of the Bill of Indictment was waived on March 11, 1997, and Petitioner pled not guilty.  The matter first proceeded to trial in February 1998, but pursuant to a defense motion, the judge declared a mistrial.  A new trial was held August 30, 1999-September 1, 1999, and the jury found Petitioner guilty as charged.

A *Motion For New Trial* was filed and denied on December 7, 1999. Petitioner was subsequently sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.  A *Motion To Reconsider Sentence* also was denied on December 7, 1999 and a *Motion For Appeal* was filed.  The Louisiana Fifth Circuit Court of Appeals affirmed Petitioner's conviction and sentence on March 28, 2001.  State v. Kinsel, 783 So.2d 532 (La. App. 5 Cir. 2001).  The Louisiana Supreme Court then denied a *Writ of Certiorari* on March 28, 2002.  State

---

[1]

As this matter stems from a request for *Certificate of Appealability* based on a petition for federal *habeas* relief, there is no appellate record in this matter.

1

v. Kinsel, 812 So.2d 641 (La. 2002). Petitioner filed an *Application for Post Conviction Relief* on March 28, 2003, which was denied without hearing by the District Court on April 2, 2003.

On May 29, 2003, the Louisiana Fifth Circuit of Appeal denied Petitioner's *Application for Supervisory Writs,* and on April 8, 2004, the Louisiana Supreme Court thereafter denied the *Application for Writ of Review*. State v. Kinsel, No. 2003-KP-1815 (La. 4/8/2004). On April 9, 2004, Petitioner filed a first *Writ of Habeas Corpus* in the United States District Court, Eastern District of Louisiana, which was dismissed without hearing on January 5, 2005. EDLA No. 2:04-cv-01010.

Petitioner thereafter filed a second *Application for Post Conviction Relief* in the 24th Judicial District Court on June 1, 2006, based on the discovery of new facts and information that supported Petitioner's claim of actual innocence. The issue raised therein was not a repetitive claim, nor was it one that could have been raised prior to that time, and was based on the recantation by the now-adult accuser in this case. The state filed a response in July of 2006, and an evidentiary hearing was held on October 4, 2006. Based on the evidence presented and the testimony of Alyssa Medlin, who recanted all allegations against John Kinsel, the trial court granted Petitioner's post-conviction on October 11, 2006. Specifically, the district court noted that that "I feel I have no other decision to make other than to grant your

2

motion for new trial". *See* Transcript of Proceedings taken on October 11, 2006, pg. 5. The trial court also determined that "in no way can one convict absent her testimony. And, therefore, I have nothing else to hang the conviction on than her testimony". *Id.* at 6.

The state immediately applied for a writ of review to the Louisiana Fifth Circuit Court of Appeal, which inexplicably granted writs on February 6, 2007, reversing the district court's grant of a new trial. 2006–KH-858 (La. App. 5 Cir. 2007). Judge Daley dissented, noting that "the law affords vast discretion in evaluating whether or not to grant a new trial given newly discovered evidence". Dissent, pg. 1. He further emphasized that "the appellate court would be over reaching the province of a reviewing court if it were to substitute its own credibility call for those of the trial court". Dissent, pg. 2.

Petitioner then filed an *Application for Writ of Certiorari or Review* to the Louisiana Supreme Court on March 8, 2007, which was denied without reasons on November 9, 2007. State of Louisiana v. John Kinsel, 967 So.2d 499 (La. 2007).

On April 2, 2008, Appellant timely filed a *Petition for Writ of Habeas Corpus,* pursuant to 28 U.S.C. § 2254, in the Eastern District of Louisiana. On May 15, 2008, that matter was transferred to this Court to determine whether this was a successive petition, and to request permission to file a second or successive petition. That

motion was granted August 1, 2008. The state thereafter responded, arguing that Petitioner's *habeas* was untimely, with which argument Magistrate Louis Moore agreed, issuing a *Report and Recommendation* on March 31, 2010 suggesting that Appellant's *habeas* be dismissed as untimely. Although Appellant filed objections, on April 21, 2010, District Judge A.J. McNamara dismissed Appellant's *habeas* with prejudice. However, it should be noted that Judge McNamara disagreed with the Magistrate's ruling, and found the *habeas* to be timely filed; rather, he dismissed on the merits.

Judge McNamara also issued a *Certificate of Appealability* the same day, granting Petitioner the right to appeal to this Honorable Court. This appeal timely follows as ordered by this Court.

(ii)    **Statement of Facts**

Trial in this matter began August 31, 1999. The state's first witness was Sergeant Darren Monie, who testified that in the fall of 1995, Child Protection Services contacted him concerning Alyssa Medlin. Sgt. Monie then spoke with Ms. Omalee Gordon of the Children's Advocacy Center, the State's second witness. (Appellate R.p. 159).[2] Ms. Gordon explained to the jury the procedure used to obtain

---

[2]

This is the state court appellate record transcript, cited herein as "Appellate R.p. ___".

4

statements from victims of child sexual abuse and identified a tape made regarding Alyssa Medlin.  On cross-examination, it was determined that the Advocacy Center is funded by government grants, assertions of the methods used by the Children's Advocacy Center were questioned as "leading," and Ms. Gordon did not have any independent recollection of Alyssa Medlin's interview. (Appellate R.p. 181, 185, 187, 192-200).

The third state witness was Petitioner's wife and the accuser's mother, Adrienne Medlin. (Appellate R.p. 205).  She stated that she never suspected Petitioner of any sort of child sexual abuse and when initially told by her daughter about the alleged sexual abuse, she did not contact the police. (Appellate R.p. 211, 212).  On cross-examination, Ms. Medlin stated that she never saw Petitioner act in a sexually inappropriate fashion with her daughter Alyssa Medlin, rather he acted "like a father" towards all the children and was "protective" of them. (Appellate R.p. 212).  Ms. Medlin also informed the jury that she brought Alyssa to Dr. Scott Benton and told the doctor that she "suspected her daughter of lying" about the sexual abuse. (Appellate R.p. 213).  She further admitted that she believed her daughter was lying not only because a friend of Alyssa's had previously falsely accused someone of similar acts, but also because Alyssa's physical description of Petitioner was incorrect. (Appellate R.p. 214).  Furthermore, Ms. Medlin stated that she never found

any evidence of sexual abuse on the person of Alyssa, nor did Alyssa complain about any pain that would typically accompany such accusations, such as soreness in her rectal or vaginal area. (Appellate R.p. 215).  Moreover, Ms. Medlin also stated that there was no occasion where Petitioner was off with Alyssa in the middle of the night. (Appellate R.p. 216).

The fourth witness called was the child accuser, Alyssa Medlin.  She testified that the first incident of sexual abuse happened in a bathroom while residing in Monroe, Louisiana and during the second incident, also in Monroe, Petitioner forced Alyssa to perform oral copulation. (Appellate R.p. 236). While residing in Monroe, Alyssa stated that Petitioner was living with her mother. (Appellate R.p. 233).  From Monroe, the witness stated that she moved to her aunt's house in Harvey on Mason Street. (Appellate R.p. 239).  While residing on Mason Street, Alyssa stated that Petitioner allegedly took her into his bedroom and placed his penis in her rectal area on several occasions. (Appellate R.p. 239).  From Mason Street, the witness stated that her family moved to Sheree Lyn Court, where Alyssa stated that Petitioner vaginally penetrated her on approximately ten occasions. (Appellate R.p. 242). Alyssa stated that she did not tell anyone about these incidents, and that similar incidents also allegedly took place when she lived on Hunterbrook Street. (Appellate R.p. 240).

6

In addition, she told the jury that Petitioner physically threatened her during one incident. Alyssa admitted to telling some of her friends about the incidents, as well as a counselor at school but on cross-examination, Alyssa testified that she did not disclose any of these incidents while living on Mason Street. (Appellate R.p. 258). She also stated that Petitioner did not vaginally assault her while she was living on Mason Street. (Appellate R.p. 259). However, the witness did claim she spoke to a friend, Georgette Evans, about these incidents. (Appellate R.p. 264). Interestingly, Georgette Evans was called as a defense witness, and acknowledged that she was friends with Alyssa Medlin, but testified that she was told by Alyssa that Alyssa made up the allegations against Petitioner because she did not like him and wanted to "get rid of him." (Appellate R.p. 348, 344).

The state also called Dr. Scott Benton, a stipulated expert in pediatric forensic medicine. (Appellate R.p. 275). Dr. Benton stated that he examined Alyssa Medlin on October 9, 1996 and failed to find significant evidence of sexual abuse (Appellate R.p. 284-285). There was no vaginal discharge, no scars or bruises in the vaginal area, and no anal trauma noted by the doctor. (Appellate R.p. 284-285). The hymen was noted as being present, but somewhat narrowed, and the narrowing of the hymen was considered by the doctor to be "abnormal" and consistent with sexual abuse. (Appellate R.p. 289, 292). However, on cross-examination, it was determined that the

7

physical evidence found by Dr. Benton was not "definitive;" rather, the evidence was classified as being "suggestive." (Appellate R.p. 302). Dr. Benton acknowledged that the term "suggestive" was considered to be less conclusive, and that such evidence might occur as a result of accidental injuries or by the child herself. (Appellate R.p. 302-303).

The last state witness was Alyssa Medlin's brother, Jason Medlin. He stated that one time he allegedly observed Alyssa and Petitioner go into a bathroom together where he then heard "kissing sounds." This information was never told to the children's mother, but he disclosed this information to his grandmother "about two years ago." (Appellate R.p. 315, 317).

The defense's first witness was Adrienne Medlin, the alleged accuser's mother. She stated that it would have been impossible for Petitioner to do anything to Alyssa from November 1993 to May of 1994 because the family moved in with her father in Jefferson Parish on Sheree Lyn Court. Appellate R.p. 334-337). As to the suggestive medical findings, Alyssa's mother stated that while living in South Carolina, Alyssa had been playing at age two with a crayon and placed it in her vagina. (Appellate R.p. 338).

The defense then called Alyssa Medlin's grandfather, Earl Alberts. (Appellate R.p. 348). He corroborated  the  testimony of his Daughter ( Alyssa's Mother )that

8

Petitioner did not even reside with Alyssa or her mother when they were living on Sheree Lyn Court. (Appellate R.p. 349). The grandfather further stated that he never saw the defendant act in a sexually inappropriate fashion. (Appellate R.p. 351).

Petitioner also testified at trial, and denied performing any sexual acts on Alyssa Medlin.  (Appellate R.p. 354-355). He acknowledged having one child with Alyssa's mother, but denied living on Sheree Lyn Court or babysitting over there. (Appellate R.p. 359-360) where the accuser alleged some of these incidents occurred.

Stacey Plaissance next testified that Petitioner and Adrienne Medlin lived at her residence for about a month, and that Alyssa complained about Petitioner because he required the children to pick up after themselves.  She also confirmed that she never saw Petitioner act or do anything sexually inappropriate towards Alyssa Medlin. (Appellate R.p. 375-376).

The jury found Petitioner guilty as charged of the aggravated rape of Alyssa Medlin, in violation of La. R.S. 14:42, and he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension.  However, a *Motion for Mistrial* was made because three of the jurors did not return of verdict of guilty, even though the verdict sheet was signed. (Appellate R.p. 466-698).

_____As noted above, the only witness to testify at trial that provided any evidence to connect him to any crime was Alyssa Medlin, the alleged accuser.  Approximately

9

six years later, after she turned 18, Medlin contacted Petitioner's post-conviction counsel and the Jefferson Parish District Attorney's office, recanting her trial statements and attesting to Petitioner's innocence.  Following a second *Application for Post-Conviction Relief,* Medlin presented extensive testimony to the trial court, explaining her actions at trial, firmly stating Mr. Kinsel's innocence, and accepting responsibility for providing false testimony almost ten years before at trial, in spite of the possibility she could face potential charges.

# SUMMARY OF ARGUMENT

**Appellant was denied his rights to a fair trial, due process of law, and his right to confront his accusers, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, when he was convicted of aggravated rape based solely on the false testimony of an accuser who has since admitted in open court that her prior allegations were untrue. Petitioner was not permitted to present the recantation facts to a jury; thus he is actually innocent of the crime and the lower courts' unreasonable determination of the facts, in light of the evidence presented in Petitioner's case, requires consideration and reversal to prevent a fundamental miscarriage of justice.**

The District Court denied Appellant's claim that he is entitled to relief based on his actual innocence, and the fact that his accuser has recanted all allegations against him. Appellant has demonstrated his innocence, and now languishes in jail in a clear violation of his Constitutional rights and against the interests of justice. The District Court erred in denying Appellant's meritorious *habeas* claim, and Appellant requests review from this Court.

## **ARGUMENT**

**Appellant was denied his rights to a fair trial, due process of law, and his right to confront his accusers, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, when he was convicted of aggravated rape based solely on the false testimony of an accuser who has since admitted in open court that her prior allegations were untrue. Petitioner was not permitted to present the recantation facts to a jury; thus he is actually innocent of the crime and the lower courts' unreasonable determination of the facts, in light of the evidence presented in Petitioner's case, requires consideration and reversal to prevent a fundamental miscarriage of justice.**

### A.    Standard of Review

On appeal from the denial of a §2254 petition, this Court reviews a district court's findings of fact for clear error, and it reviews a district court's conclusions of law *de novo*, applying the same standard of review to the state court's decision as the district court. Ortiz v. Quarterman, 504 F.3d 492, 496 (5th Cir. 2007); McCall v. Dretke, 390 F.3d 358, 362 (5th Cir. 2004).

Under AEDPA, a court may not grant relief on a claim that the state courts have adjudicated on the merits "unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is deemed "contrary to" clearly established federal law if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the

Supreme Court on materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court's decision runs afoul of the "unreasonable application" prong of § 2254(d)(1) "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).

Finally, if the state court's factual determinations are correct, this Court may grant relief only if a factual determination is unreasonable based on the evidence presented to the state court. 28 U.S.C. § 2254(d)(2), (e)(1).

## B.     Argument

On habeas review, while this Court gives deferential review to the state court decision, "[d]eference does not by definition preclude relief". <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). Habeas relief can be granted if the adjudication of a petitioner's claim " resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. §2254(d)(2); <u>Moore v. Johnson</u>, 225 F.3d 495, 501, 504 (5th Cir. 2000).

In his sole Assignment of Error, Petitioner argues his actual innocence[3] based

---

[3]

Actual innocence also renders a filing timely, and permits "collateral review of procedurally defaulted claims." <u>Bousley v. U.S.</u>, 118 S.Ct. 1604 (1998); *see also* <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).

upon the recantation of the charges in this case by his accuser. The girl who accused John Kinsel of rape has testified in court that he did not do it–yet he remains in jail. To establish actual innocence, a petitioner is required to make a showing that "in light of all the evidence , it was more likely than not that no reasonable juror would have convicted him." Bousley v. U.S., 118 S.Ct. 1604, 1611 (1998); Schlup v. Delo, 513 U.S. 298 (1995); United States v. Torres, 163 F.3d 909 (5th Cir. 1999); United States v. Thompson, 158 F.3d 223 (5th Cir. 1998). If a juror heard the alleged victim testify that Petitioner did not commit the crime, it is more likely than not that the juror would not have convicted him.

Furthermore, "the fundamental miscarriage of justice exception is confined to cases of actual innocence, where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.....To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Fairman v. Anderson, 188F.3d 635, 644 (5th Cir. 1999), internal citations omitted. In Fairman, this Court upheld relief to the petitioner, finding that the "threshold showing of actual innocence ...is anchored by the district court's crucial credibility determination". Id. at 645. Thus, the Court acknowledged a district

14

court's ability to grant relief.

In the instant case, the state district court granted relief to Mr. Kinsel, finding that without Medlin's testimony, no jury could have convicted him at trial. The Louisiana Fifth Circuit reversed, arguing that Medlin's recent testimony was not trustworthy, and that Mr. Kinsel was not entitled to a new trial.[4]  While Petitioner

---

[4]

Curiously, in its reversal of the trial court, the Louisiana Fifth Circuit contended that it could not find any "Louisiana cases that establish a standard of review where a trial court has granted a new trial based on a post-conviction relief application". 2006–KH-858, pg. 9. Perhaps the Louisiana Fifth Circuit confused post-conviction proceedings with the post-trial (pre-appeal) "motion for new trial".

La. C.Cr.P. art. 924(1) provides that "[a]n "application for post conviction relief" means a petition filed by a person in custody after sentence following conviction for the commission of an offense seeking to have the conviction and sentence set aside". If the conviction and sentence are set aside, a petitioner would be in a position for re-trial, thus the natural effect of granting post-conviction relief is a new trial. In fact, La. C.Cr.P. art. 930.5 confirms this supposition, and provides that if "a court grants relief under an application for post conviction relief, the court shall order that the petitioner be held in custody pending a *new trial*". Emphasis added.

As such, there is Louisiana jurisprudence that establishes a standard of review when considering the grant of a new trial. Moreover, these decisions also support the discretion of the trial court, and note that when ruling on a motion for new trial, a trial court must not "weigh the evidence as though it were a jury determining guilt of [sic] innocence", but rather consider "whether there is new material fit for a new jury's verdict". State v. Jones, 850 So.2d 782, 786 (La. App. 4 Cir. 2003); State v. Hammons, 597 So.2d 990, 994 (La. 1992). Jurisprudence further suggests that a trial court is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict, and has wide discretion in granting a motion for new trial. *See, e.g.,* State v. Cureaux, 736 So.2d 318, 321 (La. App. 4 Cir. 1999); State v. Brooks, 758 So.2d 814, 820 (La. App. 4 Cir. 1999). Furthermore, a trial court's ruling will be disturbed only where there is a clear showing of abuse of that discretion. State v. Manning, 380 So.2d 54 (La. 1980); State v. Humphrey, 445 So.2d 1155 (La. 1984).

Thus, the state district court was correct in granting relief, and the Louisiana Fifth Circuit erred in overturning this new trial. The Eastern District of Louisiana further erred in upholding this reversal, considering that neither court actually presided at the evidentiary hearing, nor did they consider the impact of this new evidence on a jury.

would acknowledge that recantations are often viewed with suspicion, the district court must assess witness credibility and make a determination. And that determination must be respected. This Court first enunciated a test for consideration of a motion for a new trial, based on the contention that a recanting witness' affidavit was newly discovered evidence, in <u>Newman v. United States</u>. 238 F.2d 861, 863 (5th Cir. 1956).

In that case, this Court noted that "[i]f the District Judge, on the basis of the whole record of the original trial and the maters [sic] presented on the hearing of the motion, believes the statements in the affidavit of recantation to be false and is not reasonably well satisfied that the testimony given by the witness on the trial was false, the decision is for him to reach for he is 'not at liberty to shift upon the shoulders of another jury his own responsibility, but (is) charged with the responsibility to seek the truth himself". *Id.* at 863. The <u>Newman</u> court declined to grant relief on the basis of that affidavit, where the witness exer cised his Fifth Amendment right and refused to testify. The Court found that the credibility determination was supported by record, and upheld the district court's finding. In the instant case, the witness not only testified, but corroborated the statement she previously gave in a deposition attesting to Mr. Kinsel's actual innocence.

*See also* <u>Kittelson v. Dretke</u>, 426 F.3d 306 (5th Cir. 2005), granting relief when

a defendant was prohibited from presenting all material facts to the jury, including questioning a witness concerning an accuser's recantation.  <u>Kittelson</u> also cited with approval <u>Davis v. Alaska</u>, 415 U.S. 308, 318 (1974), for the proposition that failure to permit cross-examination violates the Sixth and Fourteenth Amendments, and is important to"expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness".  *See also* <u>United States v. Scheffer</u>, 523 U.S. 303, 329 (1998) , noting that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  Petitioner was entitled to support his defense with this new information, and the district court properly granted him relief.  Like <u>Newman</u>, the District Court in Mr. Kinsel's case made a reasonable decision, based on consideration of all the facts in the case, and the higher state courts and the Eastern District of Louisiana acted unreasonably in overturning that finding.

While recanted testimony is said to upset "society's interest in the finality of convictions", it can be used to grant relief, and a new trial based on recanted testimony is justified when it is deemed true and "will render probably a different verdict." <u>Dobbert v. Wainwright</u>, 468 U.S. 1231, 1233-34 (1984), *dissenting opinion*.

 Moreover, "it may be assumed that a compelling claim for relief might be presented when newly available evidence conclusively shows that a vital mistake has been made." <u>Grace v. Butterworth</u>, 586 F.2d 878, 880 (1st Cir. 1978).  In Mr. Kinsel's case, a vital mistake DID occur.  The accuser's initial trial testimony was the sole evidence supporting Petitioner's conviction for aggravated rape, no corroborating physical or medical evidence was presented, and Petitioner has maintained his actual innocence throughout these proceedings.  It was only after his accuser turned eighteen that she came forward and informed the Jefferson Parish District Attorney's Office and the District Court that she wished to recant her testimony because Mr. Kinsel had never raped her.  Transcript of Proceedings taken on October 4, 2006, pg. 23, 38, State Court Record.

The Louisiana Fifth Circuit[5] further suggested that the sole witness, Medlin, was pressured by her family to recant (2006–KH-858, pg. 9).  Yet Medlin specifically testified that no one forced her to come forward (October 4, 2006 Transcript, pg. 23, 27) and that she has had no contact with Mr. Kinsel since the trial.  October 4, 2006 Transcript, pg. 23.  Medlin also noted that she has spoken to Mr. Kinsel's family a few times over the years, but never discussed the case.  October 4, 2006 Transcript,

---

[5]    Petitioner cites from the Louisiana Fifth Circuit opinion, as it was the last state court to issue reasons.

18

pg. 24. Medlin further acknowledged that her relationship with her mother had improved, but that she "wasn't looking to improve my relationship with her [mother] whenever I made the affidavit, but it did happen so it's a plus". *Id.*

Yet the Louisiana Fifth Circuit suggested that because Medlin's relationship with her mother improved after these false allegations were first brought to light, she must have been pressured into recanting. 2006–KH-858, pg. 7. However, the state circuit court failed to take into account that many relationships between children and parents improve as the child ages, especially once the child leaves the family household. In Medlin's case, she married and moved out of her mother's home, at which point their relationship began to improve. Moreover, at no point did Medlin's testimony waver that she had not been raped by Petitioner. At the 2006 evidentiary hearing, she testified that she had been orally molested, but again, that it was NOT John Kinsel. October 4, 2006 Transcript, pg. 16. Medlin further testified that she was not vaginally or anally raped, but instead was forced to perform oral sex on an unknown male, but that it was NOT Kinsel. *Id.* Medlin was adamant that she had never been anally or vaginally raped, a point on which she also was questioned on by the trial court. October 4, 2006 Transcript, pg. 19, 41, 46, 48.

Medlin explained that she first made these allegations after friends had also made similar accusations against their stepfather. October 4, 2006 Transcript, pg. 17.

She clarified that the allegations she made were based on stories heard from other friends, and from her group therapy sessions at the Children's Advocacy Center. October 4, 2006 Transcript, pg. 20, 46.  When questioned why she would accuse Kinsel of these crimes, Medlin responded "I didn't like him...I hated him with a passion".  October 4, 2006 Transcript, pg. 18.  She further clarified that he was strict, and would discipline her, something her real father did not do because he was out of the picture.  October 4, 2006 Transcript, pg. 19.  Recall this was supported at the original trial by the testimony of Georgette Evans, who acknowledged that she was friends with Alyssa Medlin, but testified that she was told by Alyssa that Alyssa made up the allegations against Petitioner because she did not like him and wanted to "get rid of him." (Appellate R.p. 348, 344).

Medlin then confirmed that she first told prosecutor Donnie Rowan the day of trial that her testimony was untrue, and that she did not wish to go forward.  However, she ultimately testified at trial, accusing Mr. Kinsel of rape.  October 4, 2006 Transcript, pg. 21-22, 28-29.  In fact, she initially even contacted the Jefferson Parish District Attorney's Office in March of 2006, attempting to explain the prior false testimony to set this matter right.  October 4, 2006 Transcript, pg. 10-14.  In spite of the state's allegations that Medlin told an investigator, Vince Lamia, that she was abused by Kinsel, Medlin vehemently denied making that statement to the District

Attorney's Office in 2006. October 4, 2006 Transcript, pg. 15. Medlin testified at the evidentiary hearing that she was aware she faced possible perjury charges for coming forward, but that she wanted an innocent man out of jail. October 4, 2006 Transcript, pg. 26.

The Louisiana Fifth Circuit discounted all of her testimony, finding that "the record as a whole does not show the prosecutors either coerced or knowingly used false testimony from the victim". 2006–KH-858, pg. 5. Recall this is the same Court that affirmed Petitioner's rape conviction on direct appeal based on the same witness' (Medlin) testimony, who was 12 at the time. State v. Kinsel, 783 So.2d 582 (La. App. 5 Cir. 2001). Almost her entire family testified for the defense at trial however, as even they did not believe her story. Based on her new testimony and the facts presented, the state district court carefully considered Mr. Kinsel's matter, and properly granted relief.

However, the Eastern District of Louisiana upheld the decision of the Louisiana Fifth Circuit, noting that:

> the decision of the Louisiana Fifth Circuit Court of Appeal that the district court "abused its discretion in granting Kinsel a new trial based on the victim's recantation" was neither contrary to, or involved an unreasonable application of, clearly established Federal law, nor based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. AEDPA, §2254(d). Further, the determination of factual issues by Louisiana Fifth Circuit Court of

21

> Appeal is presumed to be correct, and Kinsel has failed to meet his burden of rebutting this presumption of correctness by clear and convincing evidence.

*Order and Reasons*, pg. 8-9. This decision is certainly unreasonable, as Medlin's testimony was uncorroborated at trial, and even questioned by her own family as well as by the inconclusive medical evidence presented at trial. Recall that the defense put on her grandfather, Earl Alberts, who corroborated the testimony of his Daughter (Alyssa's Mother )that Petitioner did not even reside with Alyssa or her mother when they were living on Sheree Lyn Court, where one of the incidents allegedly occurred. (Appellate R.p. 348-349). Moreover, her testimony is dispositive of the question of guilt or innocence, and the jury would likely have reached a different result had they heard these statements.

Reviewing courts have consistently held that many trial determinations are within the discretion of the trial judge, and should not be reversed absent manifest abuse. Credibility determinations of witnesses are in the sound discretion of the trer of fact, United States v. Martinez, 975 F.2d 159, 161 (5th Cir. 1992), State v. Broadway, 753 So.2d 801, 817 (La. 1999); a trial judge is given a wide discretion in the imposition of sentences, United States v. Hayes, 589 F.2d 811, 826 (5th Cir. 1979), State v. Howard, 414 So.2d 1210, 1217 (La. 1982); a trial court has great discretion in deciding a challenge for cause, United States v. Hinojosa, 958 F.2d 624,

22

631 (5th Cir. 1992), State v. Smith, 430 So.2d 31, 39 (La. 1983); it is within the trial

court's sound discretion to decide whether to grant or deny a mistrial, Cheney v.

Director, 635 F.2d 414, 418 (5th Cir. 1981), State v. Smith, 793 So.2d 1199, 1211

(La. 2001). In Petitioner's case, a jury would likely reach a different verdict should

the trier of fact consider the new facts presented by the recantation of the now adult

victim's testimony. Without Medlin's testimony, it is reasonable and logical to

assume that the conviction would not stand.

Generally in cases where recanted testimony exists and a new trial has been

denied, it is because "there is no reason to believe that the result would be any

different at a new trial" and "the evidence does not lead to a conclusion that in all

probability a different result would be reached at a new trial." Becker v. State, 585

N.E.2d 279, 282-283 (Ind. App. 3 Dist. 1992).[6] Further, where there are other "prior

---

[6]

Considering the lack of case Louisiana (and other) law regarding recantation and its process in post-trial relief, Petitioner submits analogous areas of law, as well as other jurisdictions as guidance on the matter. As noted above in footnote 4, when ruling on a motion for new trial, a trial court must not "weigh the evidence as though it were a jury determining guilt of [sic] innocence", but rather consider "whether there is new material fit for a new jury's verdict". State v. Jones, 850 So.2d 782, 786 (La. App. 4 Cir. 2003); State v. Hammons, 597 So.2d 990, 994 (La. 1992). See also United States v. Pena, 949 F.2d 751, 758 (55th Cir. 1991), setting forth the requirements to obtain a new trial.

Jurisprudence further suggests that a trial court is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict, and has wide discretion in granting a motion for new trial. See, e.g., State v. Cureaux, 736 So.2d 318, 321 (La. App. 4 Cir. 1999); State v. Brooks, 758 So.2d 814, 820 (La. App. 4 Cir. 1999). Furthermore, a trial court's ruling will be disturbed only where there is a clear showing of abuse of that discretion. United States v. Lopez-

consistent statements before the recantation, in addition to corroboration by other witnesses," the recantation has not weighed heavily in the court's decision not to grant a new trial.  Louisiana v. Davis, 431 So.2d 117, 121 (La. App. 3 Cir. 1983).  There is no such corroboration in Mr. Kinsel's case.

United States v. O'Keefe held that "[w]e review an order granting new trial under an abuse of discretion standard. This standard is necessarily deferential to the trial court because we have only read the record, and have not seen the impact of witnesses on the jury or observed the demeanor of the witnesses ourselves, as has the trial judge."  128 F.3d 885, 893 (5th Cir. 1997) (internal citations omitted).  If this Court counsels deference to the trial court, who has "seen the impact of witnesses on

---

Escobar, 920 F.2d 1241, 1246 (5th Cir. 1991), State v. Manning, 380 So.2d 54 (La. 1980); State v. Humphrey, 445 So.2d 1155 (La. 1984).  There has been so showing of abuse of discretion by the state in the case at bar.

The Florida Supreme Court in Brown v. Florida noted that a misstatement or material error by a witness called by the prosecution can be grounds for a new trial where, at the new trial, the witness "will change his testimony to such an extent as to render probably a different verdict." 381 So.2d 690, 692-693, (Sup. Ct of Florida 1980).  In Horn v. Hill, the Oregon Court of Appeals reversed and remanded in post-conviction the trial court's determination that such relief was to be denied. 180 Ore. App. 139, 145 (2002).  In Horn, the petitioner appealed a judgment denying his post-conviction relief from convictions of sexual abuse, unlawful sexual penetration, and sodomy because his counsel failed to introduce evidence of the child victim's recantation of testimony during trial. The issue of prejudice to the petitioner played a crucial role in the court's determination to reverse.  The appellate court held that the child's testimony "was not inconsequential and that its omission had a tendency to affect the result of that prosecution. Accordingly, the trial court erred in concluding that the petitioner was not prejudiced." Id at 151.

the jury or observed the demeanor of the witnesses", then it must reverse the decision of the lower courts and grant a new trial.  Although the federal district court found that the trial court had abused its discretion, it erred in stating that "the determination of factual issues by Louisiana Fifth Circuit Court of Appeal is presumed to be correct".  *Order and Reasons*, pg. 9.  The Louisiana Fifth Circuit could not make an accurate determination of the factual issues in this case, as it did not conduct an evidentiary hearing, and merely had the cold record to review.

Throughout this case, the lower courts have wanted to have their cake and eat it too–"Medlin was truthful at Petitioner's original trial, but is lying now".  "The original trier of fact (the jury)'s presumption is correct, but we will not give any credence to the trier of fact who granted relief".  John Kinsel is actually and factually innocent of this crime, yet the lower courts keep him in jail against his rights.  Moreover, the Louisiana Fifth Circuit ignored the total lack of evidence supporting Mr. Kinsel's conviction, as well as any deference to the state district court,  and determined that even though his one-time accuser risked possible perjury charges to come forward, she could not possibly be telling the truth.  Again, the decision whether or not Medlin is being truthful is not for the Louisiana Fifth Circuit to make–that agonizing decision falls to the trial court, who heard and watched the testimony being presented, and is in the best position to determine the witnesses'

demeanor.  As Judge William W. Bivins of the New Mexico Court of Appeals noted:

> An appellate court does not observe the demeanor of live witnesses, cannot see a shift of the eyes, sweat, a squirm, a tear, a facial expression, or take notice of other signs that may mean the difference between truth and falsehood to the fact finder. Even an inflection in the voice can make a difference in the meaning. The sentence, 'She never said she missed him,' is susceptible of six different meanings, depending on which word is emphasized.

Tallman v. ABF, 767 P.2d 363, 366 (N.M.App. 1988).  In spite of the fact that the Louisiana Fifth Circuit did not hear live testimony from any of the witnesses at the evidentiary hearing or at trial, and reviewed only the cold record, the Fifth Circuit reversed the well-reasoned decision of the trial court.  That the federal district court upheld this ruling is further error that requires relief, as it, too, never saw the witness or her demeanor, and to overrule the only trier of fact with firsthand knowledge of this witness is clear error.

Medlin was the only witness to testify against Mr. Kinsel at trial, and while this is often the norm in sex abuse cases, the difference here is the age of the witness at the time of trial, the lack of determinative physical evidence, and no other corroborating witnesses or evidence to support the conviction.  She testified at the evidentiary hearing that she had had no contact with Petitioner since the trial, and had only spoken with his family a few times over the course of several years, never speaking about the case.  As argued above, Medlin's testimony was uncorroborated

at trial, and even disbelieved by her own family, along with inconclusive medical evidence. Moreover, her testimony is dispositive of the question of guilt or innocence, and the jury would likely have reached a different result had they heard these recent statements by Medlin. In light of these facts, the lower courts' rulings are clearly unreasonable.

While there appears to be little jurisprudence directly addressing the issue of recantation, the law is clear concerning the discovery of new evidence. *See* United States v. Franklin, 561 F.3d 398, 405 (5th Cir. 2009). In Louisiana v. Talbot, the Louisiana Supreme Court reversed the conviction and sentence and granted a new trial to the defendant (who was convicted of attempted aggravated rape, among other things) when new evidence surfaced. 408 So.2d 861 (La. 1980). The Court stated that, in light of the new evidence and "in the interest of fairness and justice," a new trial should have been granted and "the trial court failed to do so through errors of law and misuse of discretion." *Id*. at 887. The rationale behind the Court's decision in Talbot parallels the instant case in that the existence of new evidence, coupled with the judicial system's interest in justice and fairness, requires that Petitioner be granted a new trial.

At the time of the initial trial, not only was the state dealing with a twelve-year-old child, but the claims involved allegations of sex. During this entire

process, Petitioner always asserted his actual innocence and the recantation of his accuser supports his claims of actual innocence.  The Louisiana Fifth Circuit determined that "[w]e do not believe defendant is entitled to a second trial so that he may raise issues of fact that have already been resolved by a jury".  2006–KH-858, pg. 10.  However, these issues have not been resolved by a jury, and by further denying a jury the right to hear this new and material evidence, the Louisiana Fifth Circuit seeks to deny the finder of fact the right to hear <u>all</u> of the evidence. **Moreover, the primary concern here must be the furtherance of justice.**

Curiously, the lower courts would believe Medlin's testimony (at trial) when an innocent man's life is at stake, but would not believe her testimony attempting to set matters right.  <u>Berger v. United States</u> noted that the state must take care to ensure that its "interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done".  295 U.S. 78, 88 (U.S. 1935).  Emphasis added.  More importantly, Medlin is now an adult and presents as a  more  credible witness. She is no longer a minor who can be easily manipulated. The ability to fully understand and grasp the gravity of  her false allegations and the stark effect her testimony has had on an innocent person's life is now apparent. It is also important to note that Medlin has not conversed with Petitioner since before the initial trial over thirteen years ago, and during that time, she moved from Louisiana to Colorado. Her mother has since

divorced Petitioner. Therefore, Medlin has been sufficiently removed from the situation, the parties, and the emotional aftermath, which has allowed her to address and reflect on her actions without the possibility of manipulation or guilt from others. Furthermore, Petitioner is not Medlin's biological father, he was her step father; thus, the feeling of remorse or familial responsibility or regret for a lost relationship that traditionally attaches to parents and family is not present here nor should be considered as motivation for Medlin's recantation.

Throughout her deposition and testimony at the evidentiary hearing, Medlin remained adamant about two important facts–1) she was never vaginally or anally raped, and 2) John Kinsel did not sexually molest her in any way. At Petitioner's original trial, without Medlin's testimony, which was unsupported by any physical or testimonial evidence from any other witnesses, Mr. Kinsel's conviction could not stand. The withdrawal of the alleged victim's testimony from the prosecution's case leaves the state with *no other evidence* to support Petitioner's guilt, and to deny Mr. Kinsel relief constitutes a miscarriage of justice. Moreover, the lower courts made an objectively unreasonable decision in light of the facts as presented at the evidentiary hearing, and considering that caselaw supports the discretion of the trial court.

The only witness in this case, Alyssa Medlin, has recanted her testimony,

which leaves no evidence whatsoever to support John Kinsel's conviction. By denying Mr. Kinsel a new trial, the lower courts essentially hold that the words of child witnesses are believable, but when they become adults they cannot be believed. Our justice system will allow an adult victim who has remembered abuse as a child to proceed against her abuser, but will not grant the same consideration to Petitioner whose adult accuser wishes to recant false testimony. With this new, material evidence, a jury could not find Mr. Kinsel guilty. This Court may grant habeas relief when the state court adjudication of a claim resulted in "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S. C. §2254(d).

As noted above, this Court reviews a district court's findings of fact for clear error, and it reviews a district court's conclusions of law *de novo*, applying the same standard of review to the state court's decision as the district court. The lower courts' actions constitute a fundamental miscarriage of justice, and the mere fact that Petitioner has always asserted a claim of actual innocence, coupled with the fact that his sole accuser now comes forward and admits that he never committed the crime, suggests that he is worthy of relief. To deny an innocent man, who has now been

exonerated by the sole witness in the case, relief is preposterous. Moreover, the lower court decisions' are unreasonable, in light of the determination of facts presented in the trial court both at trial and at the evidentiary hearing.  These courts have now substituted their flawed and incomplete judgment for that of the original district court, who heard all witnesses and was in the best position to judge their credibility and whether or not relief is warranted.

## **CONCLUSION**

Petitioner John Kinsel would ask this Court to consider that "[t]he American criminal justice system rightly sets the ascertainment of truth and the protection of innocence as its highest goals".  Harvey v. Horan, 285 F.3d 298, 299 (4th Cir. 2002). He would further cite for this Court State v. Talbot, *supra,* which noted:

> Grave injustices, as a matter of fact, do arise even under the most civilized systems of law and despite adherence to the forms of procedure intended to safeguard against them. Perfection may not be demanded of law, but the capacity to correct errors of inevitable frailty is the work of a civilized legal r

408 So.2d at 887.

The instant case is one where Petitioner has asserted his actual innocence throughout the proceedings, and his conviction cannot stand.  A reasonable jury, hearing the accuser testify that Mr. Kinsel DID NOT commit this crime, would not convict, and Petitioner is entitled to a new trial in which to present this material and

exculpatory information.   For the foregoing reasons, Petitioner John Kinsel respectfully requests that this Honorable Court grant consideration to his claim.

Respectfully submitted this 6th day of July, 2010.

**LAW OFFICE OF AUTUMN TOWN**

_____
Autumn Town, Bar No. 28787
700 Camp Street, Suite 112
New Orleans, Louisiana 70130
Telephone: (504) 528-9500
Fax: (504) 324-0216

**Counsel for Appellant, John Kinsel**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a photocopy and an electronic copy of the foregoing brief has been served on the Jefferson Parish District Attorney's Office, Anne Wallis, Esq., 200 Derbigny Street, Gretna, Louisiana, 70053, via United States Mail, properly addressed and postage prepaid; and a photocopy on John Kinsel, #420674, Louisiana State Penitentiary, Angola, Louisiana, 70712, by placing same in the United States Mail, postage prepaid, this 6th day of July, 2010.  I further certify that a photocopy of the entire record (all pleadings filed to the Eastern District of Louisiana) has already been sent to John Kinsel at the above listed address.


_____
Autumn Town

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5th Circuit Local Rule 32.2.7(C), the undersigned certifies this brief complies with the type volume limitations of Fed.R.App.P. 32 (a)(7).

1.     EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH CIR. RULE 32.2, THE BRIEF CONTAINS (select one):

    A. _____ pages; OR

    B. 9184 words; OR

    C. _____ lines of text in monospaced typeface.

2.     THE BRIEF HAS BEEN PREPARED (select one):

    A. In proportionally spaced typeface using:

        Software Name and Version: WordPerfect 10

        Typeface Name and Font Size: Times New Roman 14 pt.; OR

    B. In monospaced (nonproportionally spaced) typeface using:
        Typeface name and number of characters per inch: _____

3.     THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OPR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed.R.App.P. 32(a)(7) MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

_____
Autumn Town